UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

RYAN TUTTLE,

                       Plaintiff,        **6:17-cv-06419-MAT**

                                          **DECISION AND ORDER**

       -vs-

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.
───────────────────────────────

## I.   INTRODUCTION

Represented by counsel, Ryan Tuttle ("Plaintiff") has brought this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## II.   PROCEDURAL BACKGROUND

On August 19, 2013 and January 2, 2014, respectively, Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning December 8, 2012 due to back pain and traumatic brain injury.

Administrative Transcript ("T.") 10, 95, 175-87.  Plaintiff's applications were initially denied and he timely requested a hearing, which was held before administrative law judge ("ALJ") Michael W. Devlin on September 22, 2015. T. 43-98.

On February 22, 2016, the ALJ issued an unfavorable decision. T. 10-28.  Plaintiff's request for review was denied by the Appeals Council on April 28, 2017, making the ALJ's decision the final decision of the Commissioner.  T. 1-6. Plaintiff then timely commenced this action.

### III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2018. T. 12.

At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity from October 14, 2013 to December 31, 2014, during the period he was allegedly disabled. T. 12.  In particular, the ALJ found that Plaintiff was a food expediter and dishwasher at Flaherty's Three Flags Inn ("Flaherty's") beginning on October 14, 2013 and that Plaintiff was a sandwich maker at DiBella's Old Fashioned Submarines ("DiBella's") beginning in the third quarter of 2013.  T. 12-13.  While employed at DiBella's, Plaintiff reported being on his feet for eight to ten hours a day and walking two miles

to and from work; he did not identify any special work conditions. T. 13. However, because there had been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity, the ALJ continued his analysis, and considered whether Plaintiff was disabled "for the entire period from the alleged onset date to the date of [the ALJ's] decision." *Id.*

At step two, the ALJ determined that Plaintiff had the severe impairments of back pain with radiation, status post traumatic brain injury, short term memory loss, unspecified depressive disorder, dysthymic disorder, cognitive disorder, learning disorder, and intellectual disability, and the non-severe impairments of seizures or convulsions not otherwise classified, concussion not otherwise specified, bilateral wrist pain or carpal tunnel syndrome, Klinefelter's Syndrome, and history of polysubstance dependence in remission. T. 13-14. The ALJ further found that Plaintiff's reported fibromyalgia was not a medically determinable impairment, because no acceptable medical source had ever diagnosed Plaintiff with that condition. T. 14.

At step three, the ALJ considered Plaintiff's impairments and found that, singly or in combination, they did not meet or medically equal the severity of a listed impairment. *Id.* In particular, the ALJ considered Listings 1.04, 11.04, 12.02, 12.04, and 12.05 in reaching this determination. T. 14-18.

Prior to proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following additional limitations: including the ability to occasionally lift and/or carry ten pounds; frequently lift and/or carry less than ten pounds; stand and/or walk up to two hours in an eight hour workday; sit about six hours in an eight hour workday; understand, remember and carry out simple instructions and tasks; frequently interact with co-workers and supervisors, have occasional contact with the general public; work in a low stress work environment (i.e. no supervisory duties, no independent decision-making required, etc.); and consistently maintain concentration and focus for up to two hours at a time. T. 18.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. T. 26. At step five, the ALJ relied on the testimony of a vocational expert to find that, taking into account Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including the representative occupations of label pinker and preparer. T. 26-27. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. T. 27-28.

## IV. DISCUSSION

### A. Scope of Review

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). Although the reviewing court must scrutinize the whole record and examine evidence that supports or detracts from both sides, *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

Plaintiff contends that remand of this matter for further administrative proceedings is necessary because: (1) the ALJ failed to give good reasons for affording less than controlling weight to the opinion of Plaintiff's primary care physician, Dr. Charles Wadsworth, in violation of the treating physician rule; and (2) the ALJ's RFC finding is not based on any medical opinion evidence and is therefore not supported by substantial evidence. For the reasons discussed below, the Court finds these arguments without merit.

**B.   Compliance with the Treating Physician Rule**

Plaintiff argues that the ALJ erred in affording less than controlling weight to Dr. Wadsworth's opinion, in violation of the treating physician rule. The Court disagrees.

Dr. Wadsworth is Plaintiff's primary care physician. On October 27, 2015, Dr. Wadsworth completed a Medical Source Statement Regarding Abilities and Limitations for Social Security Disability Claim related to Plaintiff. T. 771-72. In the Medical Source Statement, Dr. Wadsworth opined that Plaintiff was unable to engage in full-time employment on a sustained basis due to his trouble remembering instructions, tasks, and responsibilities. Dr. Wadsworth further opined Plaintiff would be off-task more than 30% of the time, and would be absent more than four days per month. *Id.*

In his decision, the ALJ gave some weight to Dr. Wadsworth's opinion. T. 23. Specifically, the ALJ accepted Dr. Wadsworth's opinion that Plaintiff had limitations in remembering instructions, tasks, and responsibilities, but rejected Dr. Wadsworth's opinion that Plaintiff would be off-task for more than 30% of the day and would be absent more than four days per month. *Id*. The ALJ explained that these specific limitations were unsubstantiated by the overall evidence of record, which showed that, during the relevant time period, Plaintiff had received conservative treatment for his back pain with minimal objective clinical findings, and that Plaintiff's mental health issues

had responded well to treatment, rendering Plaintiff able to "engage in a wide range of activities independently." T. 23.

Under the Commissioner's regulations in place at the time the ALJ issued his decision, a treating physician's opinion is generally entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may give less than controlling weight to a treating physician's opinion if it does not meet this standard, but must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion."). The ALJ is required to consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues" in determining how much weight to afford a treating physician's opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and

citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(1)-(6). However, the ALJ need not expressly discuss each of these factors, so long as his "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31–32 (2d Cir. 2004)).

Upon review of the medical record, I find that the ALJ adequately set forth his reasons for affording less than controlling weight to portions of Dr. Wadsworth's opinion. With respect to Dr. Wadsworth's opinion that Plaintiff would absent from work four days per month, the ALJ correctly noted that the evidence of record simply did not support this conclusion. "[T]he opinions of a treating physician need not be given controlling weight where they are contradicted by other substantial evidence in the record." *Cruz v. Astrue*, 941 F. Supp. 2d 483, 496 (S.D.N.Y. 2013) (internal quotation omitted). The evidence of record showed that Plaintiff received only periodic lumbar and spinal monitoring for his lower back pain and that an MRI scan performed on April 22, 2013 showed only mild multilevel disc space narrowing and marginal osteophytes at L3-L4, L4-L5, and L5-S1, mild S-shaped scoliosis, no acute bone or joint abnormalitiy, no spondyiolisthesis, and no visual abnormalities of the abdomen. T. 263-64. Moreover, on June 12, 2015, Plaintiff was examined for toe pain, and Dr. Wadworth noted that Plaintiff's back pain was controlled at the time. T. 417. In his decision, the ALJ also noted that on both April 4, 2013 and May 6, 2013, following his examination of Plaintiff for back

pain, Dr. Wadsworth's treatment notes assigned no disability to Plaintiff. T. 24. In fact, Dr. Wadsworth's treatment notes for both April 4, 2013 and May 6, 2013 indicate that Plaintiff could "do any type of work" and was not "disabled from regular duties." T. 316, 318. The ALJ notes that little weight was assigned to these treatment opinions due to their vagueness and conclusory nature; however, the ALJ reasonably recognized that the opinions provided some evidence of the ability to perform regular and continuing work on a sustained basis at some exertional level. T. 24.

The ALJ also noted that from September 12, 2013 to June 12, 2015, Plaintiff was seen by Dr. Wadsworth only approximately every three months, with a one-year gap in treatment from May 12, 2014 to June 12, 2015. T. 20. An ALJ may properly reject a treating physician's opinion that a claimant will be absent from work for several days in a month where that opinion is unsupported by the frequency of medical intervention. *See Petteway v. Comm'r of Soc. Sec.*, 353 F. App'x 287, 290 (11th Cir. 2009) (ALJ properly rejected treating physician's opinion that claimant would be absent from work four days per month where claimant sought medical intervention at "intervals of two or more months").

Dr. Wadsworth's opinion notes that Plaintiff would be off-task for 30% of the day, yet the other substantial evidence of record contradicts this conclusion. On October 13, 2015, Plaintiff received a psychiatric evaluation from Dr. Adam Brownfeld, which included the

-9-

administering of an intelligence evaluation. T. 23 (Decision); 751-59 (Dr. Brownfeld's evaluation). The ALJ thoroughly recited Dr. Brownfeld's findings in his decision, including that Plaintiff's full-scale IQ score was 72, with verbal comprehension, perceptual reasoning, working memory, and processing speed indexes all within the borderline to low average ranges. T. 22-23. The ALJ's RFC that Plaintiff can work in a low stress work environment, maintain concentration for up to two hours at a time, and understand, remember, and carry out simple instructions and tasks closely follows Dr. Brownfeld's opinion that Plaintiff had mild limitations dealing with stress, mild to moderate limitations maintaining attention and concentration, and marked limitations understanding, remembering and carrying out complex instructions. T. 18; 23.

Two years prior to Dr. Brownfeld's examination, on November 13, 2013, Plaintiff also received a psychological consultative examination by Dr. Yu-Ying Lin. T. 348-51. Dr. Lin opined Plaintiff had only mildly impaired attention, concentration and memory, and mild to moderate limitations in maintaining a regular schedule and appropriately dealing with stress. *Id.* In addition to the consultative examinations, Plaintiff also received an assessment by Venture Forthe, a home care services provider, on November 26, 2014, to determine eligibility for their Traumatic Brain Injury Program. T. 430-51. Notably, the assessment indicates that Plaintiff is able to stay on task independently and that although he has short term memory loss, his

memory is "functional for day-to-day activities." T. 438. This evidence is further inconsistent with Dr. Wadsworth's opinion that Plaintiff would be off-task for roughly a third of the day.

Plaintiff also argues that it was error for the ALJ to conclude that the treatment for his back pain had been conservative, because he had undergone surgery and physical therapy. However, the bulk of those treatments occurred prior to Plaintiff's alleged onset date. In particular, Plaintiff's back surgery was performed in 2007, five years before he claims to have become disabled. T. 309. It is clear from the ALJ's decision that his reference to conservative treatment was related to the time period after the alleged onset date, during which time Plaintiff saw his physicians only sporadically and did not undergo any significant treatment for his back pain. To the contrary, and as discussed above, Dr. Wadsworth's records indicate that Plaintiff's back pain was controlled as of June 2015. T. 417. Moreover, it was not improper for the ALJ to consider the fact that Plaintiff's recent treatment had been conservative. While an ALJ may not "discount[ ]" a treating physician's opinion "merely because he has recommended a conservative treatment regimen," *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008), a conservative course of treatment "may, however, help to support the Commissioner's conclusion that the claimant is not disabled if that fact is accompanied by other substantial evidence in the record." *Id.*

In sum, and for the reasons discussed above, the Court finds that the ALJ adequately explained his reasons for affording less than controlling weight to portions of Dr. Wadsworth's opinion. As such, no violation of the treating physician rule occurred.

**C. Support for the ALJ's RFC Assessment**

Plaintiff's second and final argument is that the ALJ's RFC assessment is not based on any medical opinion and is therefore unsupported by substantial evidence. In particular, Plaintiff argues that the Plaintiff's conclusion that he was capable of sedentary work, as well as his conclusion that Plaintiff was able to "'occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch and crawl; never climb ladders/ropes/scaffolds; never work at unprotected heights or near moving machinery'" (Docket No. 10-1 at 23 (quoting T. 18)) are not grounded in any medical evidence of record and were instead "conjured out of whole cloth." *Id*. Plaintiff further argues that the ALJ, without explanation, failed to include in his RFC assessment functional limitations found in the medical opinions of record. For the reasons set forth below, the Court finds that these arguments lack merit.

As a threshold matter, the ALJ properly noted that Plaintiff having been employed full time for more than a year during the relevant time period, as well as his receipt of unemployment benefits in the first and second quarters of 2015, undercuts his claim of disability. T. 25 (Plaintiff's "receipt of unemployment benefits, as well as his

work at the SGA level, leads to less compelling allegations of his inability to sustain any work on a full-time and continuing basis").

Plaintiff was hired as a dishwasher by Flaherty's Restaurant on October 14, 2013 (T. 188) where he worked for 15 months. T. 432. Plaintiff testified he worked 37 to 38 hours each week and worked as both a dishwasher and food expediter. T. 50-53. Plaintiff's earning report shows he was also working at DiBella's in the third quarter of 2013. T. 188. Plaintiff testified he was on his feet throughout his shifts at both jobs and mentioned no special accommodations made for his impairments, such as special equipment used or additional rest periods. T. 52-53. Plaintiff did testify that he was in pain from the work performed at both jobs (*id.*); however, the Venture Forthe assessment form indicated Plaintiff resigned from his position at DiBella's due to difficulty managing two jobs, and later from his position at Flaherty's due to personal reasons, not due to an inability to perform the work. *See* T. 432.

With respect to Plaintiff's ability to perform the exertional demands of sedentary work, this conclusion is well-supported by the record. In his decision, the ALJ recounts the opinion of Dr. Marisela Gomez, who conducted a consultative examination to evaluate Plaintiff's physical impairments on November 13, 2013. T. 344-47. Dr. Gomez opined Plaintiff had mild restrictions for bending, twisting, walking, and standing for long periods; however, the ALJ determined these restrictions were not substantial enough after considering Plaintiff's

overall medical record, and thus assigned little weight to Dr. Gomez's opinion. T. 21.

The ALJ also details Plaintiff's treatment by Dr. Addisu Mesfin and subsequent physical therapy. Plaintiff was referred to Dr. Mesfin by Dr. Wadsworth for his back pain in April 2013. Dr. Mesfin ordered MRIs, which Plaintiff had performed on April 22, 2013 and May 6, 2013. T. 263-67. Plaintiff saw Dr. Mesfin to follow-up on the MRI results on June 3, 2013, where Dr. Mesfin opined Plaintiff did not need injections for his symptoms, as Plaintiff's current pain medication was sufficient. Dr. Mesfin did emphasize the importance for Plaintiff to stop smoking and to work and receive physical therapy. T. 307-11. As also noted in the ALJ's decision, Plaintiff underwent a course of physical therapy from June 17, 2013 through September 9, 2013. At his initial evaluation, Plaintiff reported he was weight training and able to perform household chores, cooking, and yard work. T. 21 *referring to* T. 360. The ALJ appropriately took these activities into account in the RFC, determining Plaintiff was capable of a range of sedentary work, including occasionally lifting or carrying ten pounds, frequently lifting or carrying less than ten pounds, standing or walking up to two hours in an eight hour workday and sitting for about six hours in an eight hour workday. T. 18.

Plaintiff's argument that the ALJ invented the postural limitations set forth in the RFC finding out of whole cloth is unavailing. Dr. Wadsworth expressly noted in his opinion that

-14-

"lifting, bending, stooping, etc." exacerbated Plaintiff's back pain. T. 771. Similarly, Dr. Gomez opined that Plaintiff had a "mild restriction for bending, walking, standing for long periods of time, and twisting." T. 347. Plaintiff himself testified that it was "pulling" and "lifting" that aggravated his back pain, and that he felt "okay" when he did not have to perform those activities. T. 55. Plaintiff further testified that his back felt "great" because he hadn't done any "pushing, or bending, or pulling, [or] lifting" in a long time. *Id*. This evidence supports the ALJ's inclusion of postural limitations in his RFC finding.

Plaintiff also argues that the ALJ failed to include in the RFC finding Dr. Brownfeld's opinion that Plaintiff was "mildly to moderately limited in maintaining attention and concentration, maintaining a regular schedule" and was markedly limited in "making appropriate decisions." Docket No. 10-1. This argument is without basis. The ALJ incorporate these limitations into his RFC finding, by limiting Plaintiff to low stress, simple work with only minimal changes in work routine and processes and no independent decision-making required, and by expressly finding that Plaintiff could consistently maintain concentration and focus for only up to two hours at a time. T. 23. Plaintiff has not proffered any plausible explanation for how these limitations are inconsistent with Dr. Brownfeld's opinion.

Finally, with respect to Dr. Wadsworth's opinion that Plaintiff would be off task for up to 30% of the date, the Court has already

addressed that issue in its discussion of the ALJ's consideration of Dr. Wadsworth's assessment. For the reasons set forth in the Court's previous discussion, the Court finds no error in the ALJ's consideration of this portion of Dr. Wadsworth's opinion.

As the Second Circuit has made clear, when reviewing a decision of the Commissioner denying a claim for benefits, "whether there is substantial evidence supporting the [claimant's] view is not the question . . .; rather, [the Court] must decide whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original). In this case, for the reasons discussed above, the Court concludes that substantial evidence does support the ALJ's decision. Accordingly, that decision is upheld.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 10) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 15) is granted. Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                          **S/Michael A. Telesca**


                                    HON. MICHAEL A. TELESCA
                                    United States District Judge

Dated:    April 24, 2018
           Rochester, New York